Charles F. CUNNINGHAM, Appellant,

v.

The KARTRIDG PAK CO., Appellee.

No. 68308.

Supreme Court of Iowa.

April 20, 1983.

David J. Blair and Douglas L. Phillips, Sioux City, for appellant.

Robert E. Beebe and Michael W. Ellwanger, Sioux City, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN and CARTER, JJ., and LeGRAND, Senior Judge.

McGIVERIN, Justice.

This appeal involves the right of a former stockholder to sue as an individual for damages allegedly done to him resulting from the unsatisfactory operation of a meat processing machine leased from defendant by a corporation of which plaintiff was a principal stockholder. The district court granted the motion for summary judgment of defendant The Kartridg Pak Co. The court reasoned that plaintiff Charles Cunningham had no right to sue in his individual capacity for damages sustained by the corporation, Iowa Meat Fabricators Corp. (IMF) and that he had acquired no independent cause of action against defendant. Plaintiff appeals, alleging, in essence, that even if he did not suffer direct injury, a products liability suit creates an exception to the general rule that an individual cannot sue for corporate damages. Although plaintiff's claims demonstrate legal ingenuity, we conclude that, as a matter of law, defendant is entitled to summary judgment.

A summary judgment is properly granted only when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). On appeal our task is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. *Froning & Deppe, Inc. v. South Story Bank & Trust Co.,* 327 N.W.2d 214, 215 (Iowa 1982). In so doing, we view the facts in the light most favorable to the party opposing the motion. *Barnhill v. Davis,* 300 N.W.2d 104, 105 (Iowa 1981).

The record, consisting of the pleadings, answers to interrogatories, plaintiff's deposition, exhibits and an affidavit, reveals that the following facts exist without substantial controversy. Plaintiff, who has spent his career in the meat industry, became interested in producing a mechanically processed pork product. For business reasons not relevant here, he focused his attention on a machine manufactured by defendant which produced such a product— the Yieldmaster. Plaintiff ran test samples on a Yieldmaster in operation in Philadelphia to determine if the finished product would meet the standards of the United States Department of Agriculture (U.S.D.A.). The results of the test showed that the calcium content of the pork product was too high.

Convinced of a market for a mechanically processed pork product, Cunningham conducted further tests with the Yieldmaster and discussed the feasibility of using the machine with representatives of Kartridg Pak. Following a trip to a trade exposition in Chicago at which the Yieldmaster was displayed, Cunningham became the principal stockholder in a corporation, IMF, newly formed for the purpose of producing a mechanically processed pork product in Sioux City.

Defendant was unable to furnish IMF with a Yieldmaster when it requested one early in January 1979. From February 1979 to mid-April of that year, IMF attempted to use a machine, acquired from another company, that was comparable to the Yieldmaster. Unsatisfied with the results, IMF entered into a lease agreement with defendant for a Yieldmaster on April 26, 1979, when one became available. The lease was signed by Cunningham in his capacity as president of IMF, and in his

individual capacity as guarantor of the monthly rental payments. The lease provided that the Yieldmaster would produce a product meeting U.S.D.A. standards for calcium.

Despite numerous adjustments by defendant's engineers, the Yieldmaster failed to produce a pork product within acceptable U.S.D.A. standards. After months of failing to get IMF's meat product on the market, the stock and assets of IMF were sold. The sale transaction did not reserve to plaintiff or IMF any rights against defendant. No rentals were ever paid by IMF or plaintiff to defendant for the machine.

Thereafter, Cunningham sued Kartridg Pak in his individual capacity for alleged personal commercial losses due to Yieldmaster's failure to make an acceptable product. Plaintiff based his claim on theories of breach of express and implied warranty, negligence and strict liability.

■ I. *General rule.* We basically are presented with the question of whether plaintiff has a right to sue. Defendant contends that plaintiff was suing in his individual capacity as a shareholder for damages suffered by the corporation. As a matter of general corporate law, shareholders have no claim for injuries to their corporations by third parties unless within the context of a derivative action. *State v. Bechtel,* 244 Iowa 785, 810–11, 56 N.W.2d 173, 187 (1953); *Grimes v. Bramer,* 214 Iowa 405, 407, 239 N.W. 550, 550 (1931); 13 Fletcher Cyclopedia of Corporations § 5910 (1980).

■ There is, however, a well-recognized exception to the general rule: a shareholder has an individual cause of action if the harm to the corporation also damaged the shareholder in his capacity as an individual rather than as a shareholder. *See Annot.* 167 A.L.R. 279 (1947). Courts vary in their articulation of the test for showing direct injury to the individual. Some describe the direct injury as a special duty owed to the shareholder. *See Sherman v. British Leyland Motors, Inc.,* 601 F.2d 429, 440 n. 13 (9th Cir.1979); *Empire Life Insurance Co.*

*of America v. Valdak Corp.,* 468 F.2d 330, 335 (5th Cir.1972); *Weiss v. Northwest Acceptance Corp.,* 274 Or. 343, 348, 546 P.2d 1065, 1069 (1976); *Zokoych v. Spalding,* 36 Ill.App.3d 654, 663, 344 N.E.2d 805, 813 (1976). In other cases the direct injury is said to be an injury to the individual separate and distinct from that suffered by the other shareholders. *See ITT Diversified Credit Corp. v. Kimmel,* 508 F.Supp. 140, 144 (N.D.Ill.1981); *E.K. Buck Retail Stores v. Harkert,* 157 Neb. 867, 898–99, 62 N.W.2d 288, 307 (1954); *Alario v. Miller,* 354 So.2d 925, 926 (Fla.App.1978).

■ Recognizing that these two concepts will usually, if not always, overlap, we conclude that the test is best stated in the disjunctive: in order to bring an individual cause of action for direct injuries a shareholder must show that the third-party owed him a special duty *or* that he suffered an injury separate and distinct from that suffered by the other shareholders.

Plaintiff claims that he meets this test. He alleges that defendant's wrongful conduct injured him in his individual capacity because Kartridg Pak knew that if the Yieldmaster failed to perform, plaintiff, a majority stockholder of IMF, would be injured.

When we view the record in the light most favorable to the plaintiff, it appears that he organized IMF for the purpose of producing a mechanically processed pork product with a Yieldmaster. Our task is to determine whether the trial court correctly ruled that, as a matter of law, plaintiff failed to satisfy the test for the direct injury exception. We conclude that the trial court was right.

■ The fact that plaintiff was the majority shareholder of IMF, is irrelevant. *See 13 Fletcher Cyclopedia of Corporations* § 5910 ("The fact that a stockholder owns all, or practically all, or a majority of the stock, does not itself authorize him to sue as an individual."). Plaintiff must satisfy one of the prongs of the test articulated above.

A. *Separate and distinct injury.* The record is barren of any facts which even

remotely suggest that Cunningham's injuries were unique in comparison to those of the other shareholders, if any. The unhappy ending of this business venture was caused by the Yieldmaster's failure to function as desired, resulting in the sale of IMF at a loss. Naturally, the loss fell heaviest on those who had invested the most, but that does not make Cunningham's injury separate and distinct from that of any other shareholders. *See ITT Diversified Credit Corp.,* 508 F.Supp. at 144 (counter-claimant's allegations of injury due to reduction in income as a result of salary cut; decline in corporation's profitability; loss and dimunition in value of stock; accumulation of personal debt due to business decline; damage to personal reputation; and emotional distress, pain and suffering failed to state a claim upon which relief may be granted because alleged injuries were a consequence of claimant's position as sole shareholder).

■ B. *Special duty.* A closer question is whether organization of IMF to produce a pork product by use of the Yieldmaster created a special duty from Kartridg Pak to Cunningham. As a matter of law, we conclude that it did not.

Plaintiff's only rights must be traced to the lease agreement between IMF and Kartridg Pak which specified that the Yieldmaster would "produce [a pork] product within U.S.D.A. standards for calcium." Plaintiff signed the lease in his capacity as president of IMF; all prior understandings and agreements were merged into the lease agreement. *See Routsis v. Swanson,* 26 A.D.2d 67, 70, 270 N.Y.S.2d 908, 911 (1966). Consequently, plaintiff's only rights arise by virtue of the fact that he was a stockholder; he has failed to establish that he possessed rights extrinsic from the corporation.

In view of the above conclusions, we should distinguish a few cases in which a special duty to the shareholder was found. In *Eden v. Miller,* 37 F.2d 8 (2d Cir.1930), plaintiffs formed a corporation for freight hauling in consideration for defendant's promise to provide the corporation with capital and to secure business for it. De-

fendant breached the oral contract and plaintiffs were allowed to recover in their individual capacity. In contrast to the present case, in *Eden* the corporation was *not* a party to the breached contract.

A special duty arising out of a contract was also present in *Sedco International, S.A. v. Cory,* 522 F.Supp. 254 (S.D.Ia.1981). The court recognized that the estate of the shareholder, Roy Carver, had an individual cause of action "when the wrong is both to the stockholder as an individual and to the corporation." *Id.* at 314. In that case the wrong to the individual, Carver, was plaintiff's alleged fraudulent inducement of Carver to make substantial loans of operating capital to the corporation of which Carver was a stockholder and with which plaintiff was doing business.

As a final example, we consider *Bushmann v. Professional Men's Assoc.,* 405 F.2d 659 (7th Cir.1969), in which the stockholder, who was also a guarantor, was allowed to sue in his individual capacity because of a contract between plaintiff, defendant and a lending bank. The contract contained an implied promise by the defendant that defendant would not mismanage the corporation for which the stockholder was guarantor to the bank which was a party to the contract.

In sum, plaintiff does not show direct injuries. The injuries alleged are the consequence of being a shareholder of IMF and the cause of action rightfully belongs to the corporation. *Grimes,* 214 Iowa at 407, 239 N.W. at 550.

II. *Products liability theory.* As an alternative to the direct injury exception, plaintiff advances the novel theory that because he alleges this is a products liability claim he should be allowed to sue the manufacturer directly. Plaintiff bases this theory on our holdings that absence of privity of contract does not preclude one from seeking to recover for strict liability, *Hawkeye-Security Insurance Co. v. Ford Motor Co.,* 174 N.W.2d 672 (Iowa 1970), and for negligence and breach of warranty. *State Farm Mutual Automobile Insurance Co. v. Anderson-Weber, Inc.,* 252 Iowa 1289, 110 N.W.2d 449 (1961).

■ The theories behind product liability arose from the legitimate needs of plaintiffs to recover for damages resulting from the manufacture of defective and unreasonably dangerous products. *See generally Annot.* 33 A.L.R.3d 415 (1970); *Hawkeye-Security Insurance Co.,* 174 N.W. at 682–84. Implicit in this area of law is the notion that the defective product caused *physical harm* to the plaintiff or his property. *See Restatement (Second) of Torts,* § 402A (1965) (special liability of seller of product for *physical* harm to user or consumer); U.C.C. § 2–318, comment 3 (1977) ("The third alternative [Iowa Code § 554.2318 (1981)] . . . follows the trend of modern decisions as indicated by Restatement of Torts 2d § 402A . . . ."). Plaintiff does not claim any physical harm to himself from the operation of the Yieldmaster. Cunningham, however, seeks to have the protection of products liability law extended to shareholders who have suffered business losses due to defective products used in their corporation's manufacturing process. This is untenable.

Specifically, plaintiff contends that by analogy the warranty provisions of article 2 of the Uniform Commercial Code apply to this lease transaction. Iowa Code section 554.2318 (1979) provides:

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

It is plaintiff's contention that he is within that group of persons "who may reasonably be expected to use, consume or be affected by the goods." We disagree. While not deciding the question of the applicability of the UCC to lease transactions, we simply hold that a shareholder who has suffered no direct injuries by a third party's wrongs to a corporation is not covered by the UCC warranty provisions.

Plaintiff is not an injured consumer; he was a shareholder of a corporation whose expectations did not materialize. To allow a shareholder to use products liability law as the vehicle to a direct cause of action otherwise denied by general corporate law would be an injustice to both areas of the law.

■ The general rule prohibiting shareholders from suing for injuries to the corporation is grounded on sound policy. It is based on the principle that all shareholders suffer in proportion to the number of shares he or she holds. Thus when the corporation brings the cause of action, all shareholders are benefited. *Commonwealth of Massachusetts v. Davis,* 140 Tex. 398, 407, 168 S.W.2d 216, 221 (1943). A contrary rule would authorize each shareholder to sue and would result in a multiplicity of suits against the wrongdoer. *E.K. Buck Retail Stores,* 157 Neb. at 899, 62 N.W.2d at 307. Further, the rule is necessary to prevent impairment of creditors' rights and to retain in the board of directors of the corporation its prerogative to use recovered damages for any legitimate business purpose. *Norman v. Nichiro Gyogyo Kaisha, Ltd.,* 645 P.2d 191, 194 (Alaska 1982).

IMF could have sued defendant for breach of warranty, and if it had refused to do so plaintiff could have sued derivatively. Additionally, when IMF was sold, its rights against Kartridg Pak could have been reserved. In view of these alternatives for holding defendant responsible for the failure of its machine to perform as warranted, we conclude that there is no policy justification to allow plaintiff to use products liability law as a back-door approach to the direct injury exception.

In view of the above, we hold that plaintiff failed to generate a genuine issue of material fact on whether he suffered a direct injury. The law was correctly applied by the district court in sustaining defendant's motion for summary judgment.

AFFIRMED.