**UMPHLETT LUMBER COMPANY, Calhoun W. Umphlett and Virginia Umphlett, Plaintiffs,**

v.

**TRIDENT SYSTEMS, INC. and Sierra Pacific Industries, Defendants.**

Civ. A. No. 2:93–2869–18.

United States District Court, D. South Carolina, Charleston Division.

Feb. 28, 1995.

G. Trenholm Walker, Andrew K. Epting, Jr., Kay Tennyson, Charleston, SC, for plaintiffs.

Bert Glen Utsey, III, Mark E. Bostick, H. Michael Bowers, W. Jefferson Leath, Sally H. Rhoad, Charleston, SC, and David H. Dun, Eureka, CA, for defendants.

## ORDER

NORTON, District Judge.

This action came for hearing before the court on January 17, 1995, on Defendants Trident Systems, Inc. and Sierra Pacific Industries' Motion [1] for Partial Summary Judgment with respect to liability to the individual Plaintiffs, Calhoun W. Umphlett and Virginia Umphlett. Because this court finds that the claims of the individual Plaintiffs are not separate and distinct from those asserted by the corporation and further that the Defendants owed the individual Plaintiffs no special duty, Defendants' Motion for Partial Summary Judgment is hereby granted.

### I. BACKGROUND

This suit arises as the result of the purchase of an "optimizer" system by Plaintiff Umphlett Lumber Company ("ULC") for use in its sawmill. An optimizer system is an optical scanning system that incorporates video cameras and computers to position a log on the mill carriage in relation to the saw so that the log will be efficiently and quickly cut according to desired configurations. ULC is a closely held family corporation in which Calhoun Umphlett is a shareholder, officer and director. Virginia Umphlett is his wife. The Umphletts personally guaranteed the indebtedness of ULC shortly after ULC bought the optimizer. Defendant Trident Systems sold the optimizer to ULC, and Sierra Pacific designed certain software that was incorporated into the optimizer scanner. The optimizer was installed in May 1989 and Plaintiffs allege that although the optimizer was supposed to increase lumber production at the sawmill, once the system was in place the lumber yield apparently decreased. Plaintiffs further allege that the decrease in production was because the optimizer system was defective. Approximately four years after the installation of the optimizer system, ULC went out of business and Plaintiffs further claim that ULC's demise was a result of the optimizer's failure to perform adequately.

Plaintiffs filed this action on September 22, 1993 asserting causes of action for breach of express warranty, breach of implied warranty and negligence.[2] As a result of ULC's closing, Calhoun and Virginia Umphlett have been called upon to make payments under their personal guarantees to ULC's lender, Nationsbank. In order to make these payments, the Umphletts, as of June 1994, have sold various properties with a combined market value of $728,481.46 and Mrs. Umphlett has used personal money to cover ULC's obligations in the amount of $19,443.36. The individual Plaintiffs argue that these losses are separate and distinct from those of the corporation. Defendants argue that the individual Plaintiffs may not maintain separate claims for loss and damages in addition to those made by the corporation because such claims could potentially result in a double recovery.

### II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to

1. Defendant Trident Systems, Inc. filed this motion on November 23, 1994. On December 22, 1994, Defendant Sierra Pacific Industries filed a Motion to Join in Trident Systems, Inc.'s Motion For Partial Summary Judgment (Individual Liability). This court also grants Sierra Pacific's motion to join in this motion.

2. Plaintiffs agreed to drop the third cause of action based on negligence after oral argument but prior to the court's rendering a decision on this motion. Therefore, Defendant Sierra Pacific Industries' Motion For Partial Summary Judgment on the negligence cause of action, which was also heard on January 17, 1994, is moot.

establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. CenTra, Inc.,* 947 F.2d 115, 119 (4th Cir. 1991).

### III. ANALYSIS

■ The issue before the court is whether the individual Plaintiffs can now assert any breach of warranty claims based on the alleged failure of the optimizer. The individual Plaintiffs allege that Defendants breached both express and implied warranties and they are due damages as a result of their economic injury.

This court finds that the individual Plaintiffs cannot assert any claims for breach of express or implied warranty. As stated by the Fourth Circuit in *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel,* 20 F.3d 1311 (4th Cir.1994):

> It is considered a "fundamental rule" that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.".... The only exception to this rule is "where the injury to individual stockholders results from a special duty owed to the stockholder by the wrongdoer and having an origin independent of plaintiff's status as stockholder."

*Id.* at 1317 (quoting *Jones v. Niagara Frontier Transp. Auth.,* 836 F.2d 731 (2d Cir. 1987), *cert. denied,* 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988) and *Process Components, Inc. v. Baltimore Aircoil Co.,* 89 N.C.App. 649, 366 S.E.2d 907, 912, *aff'd per curiam,* 323 N.C. 620, 374 S.E.2d 116 (1988)).

This case is many ways similar to *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881 (Iowa 1983). In *Cunningham* the plaintiff/appellant was the majority shareholder of a meat packing corporation who entered a lease with the defendant/appellee company for a machine called the "Yieldmaster" which was supposed to produce pork within U.S.D.A. standards. *Id.* at 882–83. The plaintiff signed the lease in his capacity as president of the corporation and in his individual capacity as guarantor of the monthly payment. Despite numerous adjustments by design engineers, the Yieldmaster failed to produce an acceptable meat product. Plaintiff then sued in his individual capacity on theories of breach of express and implied warranties, negligence and strict liability. *Id.* at 883. The court applied the following test: "[I]n order to bring an individual cause of action for direct injuries a shareholder must show that the third-party owed him a special duty or that he suffered an injury separate and distinct from that suffered by the other shareholders." *Id.* at 883; *see also ITT Diversified Credit Corp. v. Kimmel,* 508 F.Supp. 140, 144 (N.D.Ill.1981) ("A court must preliminarily determine if the 'gravamen' of the pleadings alleges injury to the plaintiff upon an individual claim as distinguished from an injury which affects the shareholders as a whole." (quoting *Poliquin v. Sapp,* 72 Ill.App.3d 477, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (1979)). The *Cunningham* court rejected the plaintiff's claims that the defendant's wrongful conduct injured him in his individual capacity because the defendant knew that if the Yieldmaster failed to perform, the plaintiff as a majority stockholder would be injured. 332 N.W.2d at 883. The court also refused to place any importance on the fact that the plaintiff was the majority shareholder of the corporation recognizing "[t]he fact that a stockholder owns all, or practically all, or a majority of the stock, does not authorize him to sue as an individual." *Id.* at 883 (quoting 13 Fletcher Cyclopedia of Corporations § 5910). In its analysis, the court looked to determine whether there was a "separate and distinct injury" to the plaintiff or whether the plaintiff was owed any "special duty."

Even viewing the pleadings in the light most favorable to the Umphletts, this court finds that the individual Plaintiffs have not suffered any separate and distinct injury.

The gravamen of the pleadings is based on the economic loss to the corporation that indirectly resulted in the Umphletts' losses due to the alleged failure of the optimizer to perform as warranted. In spite of the fact that Mr. Umphlett was a shareholder, officer and director of a closely held family corporation and the Umphletts were also the personal guarantors of ULC's loans, this court refuses to treat the shareholders or guarantors of a close corporation more favorably than those of any other corporation. *See Todd v. Zaldo*, 304 S.C. 275, 403 S.E.2d 666, 668 (Ct.App.1991) (rejecting an argument very similar to the one advanced by Plaintiffs); *Cunningham*, 332 N.W.2d at 883. To allow the Umphletts to pursue individual claims against the Defendants "would authorize multitudinous litigation and ignore the corporate entity.... Simply stated, the claimed damages are those of the corporation, not those of the [plaintiffs]." *SmithSetzer & Sons, Inc.*, 20 F.3d at 1318 (quoting *Erlich v. Galsner*, 418 F.2d 226, 228 (9th Cir.1969)).

■ Additionally, this court finds that the Defendants owed the Umphletts no special duty under warranty law. Plaintiffs argue that the protection of any warranties on the optimizer purchased by ULC should be extended to the Umphletts individually.[3] The applicable section of the U.C.C. adopted by South Carolina governing express and implied warranties states:

A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume **or be affected by the goods** and whose person or property is damaged by breach of the warranty. A seller may not exclude or limit the operation of this section.

S.C.Code Ann. § 36–2–318 (Law.Co-op.1976) (emphasis added). This section protects three groups of natural persons[4]—potential or actual (1) users, (2) consumers and (3) those "affected" by the goods. In addition to a plaintiff being in one of these three categories, the breach of the warranty must result in some kind of damage to person or property.[5]

In this case, the corporation was the "consumer" and "user" of the optimizer. Therefore, in order to be protected under this section, the individual Plaintiffs must qualify under the category of natural persons expected to be "affected" by the goods and whose property has been damaged by the breach of warranty. Plaintiffs contend that they rightfully fit in the category of those expected to be affected by the goods because Defendants should have known that the individual Plaintiffs, as guarantors of the loans of a close corporation, could be affected by the optimizer's failure. For this court to recognize the position advocated by the individual Plaintiffs would extend the protection of express and implied warranties of goods to an unacceptable degree and in doing so thereby allow any guarantor of any corporation to assert a warranty claim for economic loss for a wrong committed against the corporation. If the optimizer were defective, ULC is the proper party to assert the warranty claim for any financial losses because it was both the purchaser and user of the equipment. Any losses of the Umphletts that are a direct result of ULC's failure are an indirect result of any defects in the optimizer. "An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief." *NCNB Nat. Bank v. Tiller*, 814 F.2d 931, 937 (4th Cir.1987), *overruled on other grounds, Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir.1990). If ULC is able to prove at trial that its losses were caused by a breach of an express or implied warranty of the optimizer, the Umphletts can then look to any damages recovered by ULC to recover their individual losses. To hold otherwise could result in a potential double recovery for the Plaintiffs.

---

**3.** Plaintiffs rely on *Gasque v. Eagle Machine Co.*, 270 S.C. 499, 243 S.E.2d 831 (1978). However, in that case, the individual asserting the warranty claim was both the actual purchaser and user of the defective good. *Id.* 243 S.E.2d at 831.

**4.** The term "natural person" has been interpreted by the courts to include corporations. *JKT*

*Co. v. Hardwick*, 274 S.C. 413, 265 S.E.2d 510, 512 (1980).

**5.** The South Carolina courts have interpreted consequential economic damages in the form of lost profits to qualify under this statute as property damage. *Gasque v. Eagle Machine Co., Ltd.*, 270 S.C. 499, 243 S.E.2d 831, 832 (1978).

## IV. CONCLUSION

For the foregoing reasons, this court finds that partial summary judgment is appropriate on this issue.

**IT IS THEREFORE**

**ORDERED** that Defendant Sierra Pacific Industries' Motion to Join in Trident Systems, Inc.'s Motion For Partial Summary Judgment (Individual Liability) be **GRANTED.**

**ORDERED** that Defendant Sierra Pacific Industries' Motion for Partial Summary Judgment (Negligence and Economic loss rule) is **MOOT.**

**ORDERED** that Defendants Trident Systems, Inc. and Sierra Pacific Industries' Motion for Partial Summary Judgment (Individual Liability) be **GRANTED.**

**AND IT IS SO ORDERED.**