# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1639

_____

Nelson Gomes, individually, derivatively and on behalf of others similarly situated,

*Plaintiff - Appellant*,

v.

American Century Companies, Inc.; American Century Global Investment Management, Inc.; James E. Stowers, Jr.; James E. Stowers, III; Jonathan S. Thomas; Thomas A. Brown; Andrea C. Hall; Donald H. Pratt; Gale E. Sayers; M. Jeannine Strandjord; Timothy S. Webster; William M. Lyons; Enrique Chan; Mark Kopinski; American Century World Mutual Funds, Inc., doing business as American Century International Discovery Fund,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 19, 2012
Filed: March 28, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Nelson Gomes, an investor in the American Century International Discovery Fund ("the Fund"), brought Maryland common-law claims and federal racketeering claims for violations of 18 U.S.C. §§ 1962(c) and (d) against the appellees, who are the Fund's fiduciaries ("the fiduciaries"). Among other claims, the complaint alleged derivative claims on behalf of the Fund for breach of fiduciary duty, negligence, waste, and racketeering. The district court[1] dismissed Gomes's complaint for failure to state a claim. Gomes appeals the dismissal of his derivative claims, and we affirm.

I.

The complaint alleges that the fiduciaries knowingly caused the Fund to invest millions of dollars in two off-shore Internet gambling websites. The websites, Bwin Interactive Entertainment AG and NETeller Plc, illegally took wagers from gamblers in the United States. When the government began aggressively prosecuting off-shore gambling operations during the summer of 2006, both websites forfeited hundreds of millions of dollars and stopped operating in the United States. Their share values dropped precipitously. As the websites' share values plummeted, so too did the share values of the Fund, because the Fund's value was calculated on the basis of the net value of the Fund's portfolio. The Fund realized millions of dollars in losses when it sold its shares of Bwin and NETeller.

The Illegal Gambling Business Act of 1970 makes it a felony to "own[] all or part of an illegal gambling business." 18 U.S.C. § 1955(a). A violation of § 1955 is a predicate crime under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(1). Gomes claims that the fiduciaries knew that purchasing the shares was illegal, because before the purchases, the Justice Department had issued public warnings stating that Internet gambling websites which

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

took bets from United States residents were criminal organizations. NETeller's prospectus from April 2004 also candidly acknowledged that it might be prosecuted, and the principals of similar off-shore websites already had been prosecuted.

The fiduciaries moved to dismiss Gomes's complaint for failure to make a pre-suit demand on the board of directors of the Fund. The district court granted the motion, and Gomes appeals.

## II.

We review *de novo* a district court's decision to grant a motion to dismiss, accepting the complaint's allegations as true. *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 804 (8th Cir. 2012). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal Rule of Civil Procedure 23.1 imposes a heightened pleading standard on complaints in derivative actions. It requires that the plaintiff "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).

Although Rule 23.1 "contemplates both the demand requirement and the possibility that demand may be excused, it does not create a demand requirement of any particular dimension." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (emphasis omitted). Rather, it is "a rule of pleading" that "requires that the complaint in such a case allege the facts that will enable a federal court to decide whether such a demand requirement has been satisfied." *Halebian v. Berv*, 590 F.3d 195, 211 (2d Cir. 2009) (internal quotations omitted).

When a plaintiff pursues derivative claims arising under state law without making a pre-suit demand, a federal court must apply state law to determine whether demand is excused. *Id.* at 204. When the derivative cause of action arises under federal law, federal courts should "incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objectives of the federal programs." *Kamen*, 500 U.S. at 98 (internal quotations and alterations omitted).

Gomes argues that applying Maryland's demand requirement to his racketeering claim would be inconsistent with RICO's broad remedial purpose. Gomes also contends that even if his RICO claim is subject to Maryland's demand requirement, demand was excused as to all of his claims under Maryland law.

A.

We first consider whether applying Maryland's demand requirement to a derivative claim arising under 18 U.S.C. § 1964(c) would be inconsistent with RICO's objectives. Whether demand is required before the filing of a derivative RICO claim is a question of federal law. *See Kamen*, 500 U.S. at 97. But gaps in federal statutes bearing on the allocation of governing power within a corporation should be filled with state law, unless doing so would be "inconsistent with the policies underlying the federal statute." *Id.* at 99, 108. "The scope of the demand requirement under state law clearly regulates the allocation of corporate governing powers between the directors and individual shareholders." *Id.* at 108. Therefore, we must determine whether Maryland's demand requirement is inconsistent with "the policies underlying" RICO. *Id*.

Gomes argues that it would frustrate RICO's broad "remedial purposes" to apply Maryland's demand requirement to his racketeering claim. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 904(a), 84 Stat. 922, 947. A broad

-4-

remedial purpose, however, is not inconsistent with a demand requirement. The Supreme Court long has held that securities laws combating fraud, including the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-1 *et seq.*, should be construed flexibly to effectuate their remedial purposes. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 386-87 (1983); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 & n.15 (1972). Nonetheless, in *Burks v. Lasker*, 441 U.S. 471 (1979), the Court held that the ICA did not prevent the directors of a New York corporation from terminating a derivative claim brought without a pre-suit demand. *Id.* at 484-85. Despite the ICA's remedial purposes, the Court explained, "[t]here may well be situations in which the independent directors could reasonably believe that the best interests of the shareholders call for a decision not to sue." *Id.* at 485. The Court held that "Congress did not require that States, or federal courts, absolutely forbid director termination of all nonfrivolous actions." *Id.* at 486.

Gomes relies on *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984), where the Supreme Court allowed derivative claims under the ICA to proceed without a demand, but *Fox* held that demand was not required for a different reason: mutual funds were not authorized to pursue claims under § 36(b), so the requirements of Rule 23.1 simply did not apply. *Id.* at 542. It is undisputed that Gomes's claims are subject to Rule 23.1 and that the fiduciaries could legally choose to adopt his claims.

Under *Kamen*, the question is whether application of Maryland's demand requirement would frustrate the policies of RICO, and we think it would not. That a federal statute has a remedial purpose does not make all claims arising under it immune from state law demand requirements. *See Burks,* 441 U.S. at 485-86. Requiring an investor to offer the corporation an opportunity to pursue its own claim does not preclude the investor from suing if the directors refuse the demand. *See Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001). Because Maryland's demand requirement does not frustrate the federal policies underlying RICO, we apply Maryland law to all of Gomes's claims to determine whether demand was excused.

B.

Gomes next argues that demand was excused as futile under Maryland law. The futility exception to Maryland's demand requirement is "very limited." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001). The Maryland Court of Appeals has explained that demand is excused only when:

> the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Id.*

Gomes first contends that demand would have been futile, because after his complaint was filed, the fiduciaries rejected a pre-suit demand that contained nearly identical allegations. But whether demand is futile "must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight." *Lewis v. Graves*, 701 F.2d 245, 250 (2d Cir. 1983) (internal quotation omitted). If demand was not futile when the complaint was filed, then the shareholder had no right to initiate the action. "[I]t is only when demand is excused that the shareholder enjoys the right to *initiate suit* on behalf of his corporation in disregard of the directors' wishes." *Werbowsky*, 766 A.2d at 134 (emphasis added) (internal quotation omitted).

Gomes asserts that courts regularly consider post-filing events when determining whether demand was excused. But he cites only one such case holding that demand was excused, *In re Am. Int'l Group, Inc.*, 965 A.2d 763 (Del. Ch. 2009), and the board's position of neutrality in that case manifested tacit approval for the

continuation of litigation under Delaware law. *Id.* at 809-10. In this case, the Fund's fiduciaries moved to dismiss the case and never approved the litigation. Accordingly, there is no reason to look past the date on which Gomes filed his complaint to determine whether demand was excused.

Gomes next argues that demand was excused because the fiduciaries could not reasonably have been expected to respond to a demand in good faith. Citing *Parish v. Maryland & Virginia Milk Producers Association*, 242 A.2d 512 (Md. 1968), Gomes claims that the fiduciaries could not fairly consider a demand because they were responsible for the Fund's illegal actions and will be liable if his claim succeeds. In *Parish*, the Maryland Court of Appeals held that where a majority of the board participated in the alleged wrongdoing, "it would be futile for the plaintiffs to make demand upon those directors to cause the Association to sue them to recover for their own wrongful injuries to the Association." *Id.* at 545.

We must consider *Parish* in light of the more recent decision in *Werbowsky*. *Werbowsky* observed that "[w]hatever may have been the perceived trend in 1968, when *Parish* was decided, the trend since then has been to enforce *more strictly* the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception." *Werbowsky*, 766 A.2d at 137 (emphasis added). The court then repudiated the part of *Parish* cited by Gomes, holding that it was "not willing to excuse the failure to make demand simply because a majority of the directors approved or participated in some way in the challenged transaction or decision." *Id.* at 143. On the contrary, the court explained that the demand requirement "gives the directors—even interested, non-independent directors—an opportunity to consider, or reconsider, the issue in dispute." *Id.* at 144.

No Maryland court has held after *Werbowsky* that demand was excused because the directors participated in the transaction giving rise to the claim and might be personally liable if the claim succeeded. Gomes cites one unpublished federal

decision holding that demand was excused under Maryland law, in part because the directors participated in the decisions that allegedly harmed the corporation. *See Felker v. Anderson*, No. 04-0372-CV, 2005 WL 602974, at *3 (W.D. Mo. Feb. 11, 2005). But other federal courts applying Maryland's demand requirements have questioned *Felker*'s reasoning and declined to follow it. *See Seidl v. Am. Century Co.*, 713 F. Supp. 2d 249, 258 n.13 (S.D.N.Y. 2010) (collecting cases). We conclude that *Seidl*, *id*. at 259-62, states the better view of Maryland law on this point.

We therefore hold that demand was required on all of Gomes's derivative claims. After *Werbowsky*, participation by directors in alleged wrongdoing is not sufficient to excuse demand. Therefore, the district court correctly dismissed Gomes's complaint. Because Gomes failed to make the required demand, we need not address whether he adequately pleaded that the alleged RICO violations proximately caused the Fund's losses.

\*    \*    \*

The judgment of the district court is affirmed.

_____