# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2835

_____

Gregory M. Shepard

*Plaintiff - Appellant*

v.

Employers Mutual Casualty Company; Bruce G. Kelley

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 13, 2021
Filed: May 19, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Gregory M. Shepard sued Employers Mutual Casualty Company and Bruce G. Kelley, asserting a claim for breach of fiduciary duty. The district court[1] dismissed his complaint, ruling the claim was derivative in nature and he failed to

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

meet the filing requirements. *See* **Fed. R. Civ. P. 12(b)(6)**. It alternatively determined that Employers Mutual and Kelley did not owe him fiduciary duties as a minority shareholder. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Gregory Shepard was a minority shareholder of EMC Insurance Group, Inc., a property-and-casualty-insurance holding company. EMCI was spun-off from Employers Mutual and incorporated in Iowa in 1974. It became a publicly traded company in 1982. EMCI was controlled by Employers Mutual, which owned about 54% of its shares in 2019. Bruce Kelley was the CEO and a director of both EMCI and Employers Mutual.

Shepard alleges that Employers Mutual structured EMCI as a shell company, preventing it from becoming a valuable company or acting independently from Employers Mutual. EMCI's board of directors had five positions—Kelley and four independent directors. EMCI had no employees; all of its officers simultaneously served as officers of Employers Mutual. All of EMCI's business arose from, and was managed by, Employers Mutual. According to Shepard, a pooling agreement with Employers Mutual, in addition to other policies and practices, depressed EMCI's value and share price, compared to peer public companies.

On November 15, 2018, Employers Mutual began a squeeze-out merger to purchase EMCI's remaining shares.[2] EMCI's board formed a special committee of its independent directors to consider the purchase price. The special committee accepted Employers Mutual's offer of $36 per share, an increase from an initial offer

---

[2]A "squeeze-out merger occurs when Corporation A, which holds a controlling interest in Corporation B, uses its control to merge B into itself or into a wholly owned subsidiary." *Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 3 n.1 (1985) (internal quotations omitted). "The minority shareholders in Corporation B are, in effect, forced to sell their stock." *Id.*

of $30 per share. The squeeze out was approved by a majority-of-the-minority vote (shareholders excluding Employers Mutual).

Shepard sued Employers Mutual and Kelley. He alleges that, "in the years leading up to the Squeeze-out," they breached fiduciary duties owed to him as a minority shareholder of EMCI. These fiduciary duties, he asserts, were to enhance and promote EMCI's business and value, and maximize its share price. He does not claim they breached their fiduciary duties during the squeeze out.

The district court granted Employers Mutual and Kelley's 12(b)(6) motion to dismiss. *Shepard v. Emps. Mut. Cas. Co.*, 476 F. Supp. 3d 862 (S.D. Iowa 2020). The court ruled that Shepard's breach of fiduciary duty claim was derivative in nature. It dismissed his complaint because he failed to plead he met the prerequisites for commencing a derivative action. In the alternative, it dismissed his complaint for lacking a cognizable legal foundation, determining that Iowa law does not recognize a fiduciary duty to maximize share value, or fiduciary duties to minority shareholders owed by a majority shareholder or director. Shepard appeals.

This court reviews de novo the grant of a motion to dismiss. *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (citation omitted). To survive a 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly*, 550 U.S. at 556.

## II.

Shepard argues that the district court erred in determining that his claim was derivative, not direct.

In a "derivative action," shareholders "indirectly assert their rights through the rights of the company." *Weltzin v. Nail*, 618 N.W.2d 293, 295 (Iowa 2000) (en banc). In other words, shareholders sue on the corporation's behalf against a third party because the "corporation [has] *failed to enforce a right which may properly be asserted by it*." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 528 (1984) (emphasis in original) (alteration in original) (citation omitted). This action is "unique in that the shareholders allege the company's directors have directly harmed [the corporation] by their acts and omissions such that the company has suffered a loss." *Weltzin*, 618 N.W.2d at 295 (alteration added).

Generally, under Iowa law, "shareholders have no claim for injuries to their corporations by third parties unless within the context of a derivative action." *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 883 (Iowa 1983) (citations omitted). *See Taha v. Engstrand*, 987 F.2d 505, 507 (8th Cir. 1993) (same). A "breach of fiduciary duty is generally recognized as a derivative claim." *Rieff v. Evans*, 630 N.W.2d 278, 295 (Iowa 2001) (en banc) (citations omitted).

There is an exception to this general rule: a shareholder has an individual cause of action if he shows "that the third-party owed him a special duty *or* that he suffered an injury separate and distinct from that suffered by the other shareholders." *Cunningham*, 332 N.W.2d at 883 (emphasis in original). *See Taha*, 987 F.2d at 507 (same).

A.

According to Shepard, the district court erred in determining that his injury—the reduced EMCI stock price in the years leading up to the squeeze out—did not arise from a special duty.

"[W]hen there exists a special duty to the shareholder, outside of duties to the corporation, breach of that duty individually harms the shareholder and suit may be brought in that capacity." *Ezzone v. Riccardi*, 525 N.W.2d 388, 395 (Iowa 1994) (alteration added), *citing Cunningham*, 332 N.W.2d at 883. But where a "plaintiff's only rights arise by virtue of the fact that he was a stockholder; he has failed to establish that he possessed rights extrinsic from the corporation." *Cunningham*, 332 N.W.2d at 884.

1.

Special duties typically arise in the context of contractual relationships involving shareholders. *See id.* In *Cunningham*, the Supreme Court of Iowa identified three cases with a special duty in this context. *Id.*, *citing Eden v. Miller*, 37 F.2d 8 (2d Cir. 1930), *Sedco Int'l, S. A. v. Cory*, 522 F. Supp. 254 (S.D. Iowa 1981), *aff'd*, 683 F.2d 1201 (8th Cir. 1982), *and Bushmann v. Professional Men's Assoc.*, 405 F.2d 659 (7th Cir. 1969).

In *Eden*, shareholders recovered in a direct action for the defendant's breach of contract with them. *Eden*, 37 F.2d at 9. Under the contract, the defendant agreed to give the corporation capital and secure business for it, in exchange for the shareholders forming the corporation. *Id.* The *Cunningham* court emphasized that in *Eden*, the "corporation was *not* a party to the breached contract." *Cunningham*, 332 N.W.2d at 884 (emphasis in original).

In *Sedco International*, a shareholder was allowed to bring a direct action against a corporation's directors and controlling shareholders for fraudulently

inducing him into lending to the corporation. *Sedco Int'l*, 522 F. Supp. at 314. The injury was "both to the stockholder as an individual and to the corporation." *Id.* at 314 (citations omitted). The "wrong to the individual" was the fraudulent inducement to "make substantial loans of operating capital to the corporation." *Cunningham*, 332 N.W.2d at 884. Harmed as an individual, he could bring a direct action. *See id.*

In *Bushmann*, a guarantor, who was also a shareholder, was allowed to bring a direct action for breach of a lending contract between himself, a corporation, and a lending bank. *Bushmann*, 405 F.2d at 662. The guarantor sought "only damages which he sustained individually"—his liability to pay the corporation's indebtedness to the bank. *Id.* at 663. Those damages "were not sustained by [the corporation] and thus could not have been asserted by [it] in an action against the defendant." *Id.* (alterations added). The guarantor's cause of action was "manifestly personal and not derivative since his liability to pay the corporation's indebtedness to the Bank, which is his principal item of damage, does not arise from his status as a stockholder of the corporation." *Id.*

The Iowa Supreme Court also found a special duty arising out of a contractual relationship in *Ezzone*. There, shareholders brought a direct action for a tortious-interference-with-contract claim. *Ezzone*, 525 N.W.2d at 395. The two plaintiff-shareholders each owned 50% of the corporation. *Id.* at 392. The shareholders asserted the defendants interfered with their contracts as the corporation's shareholders by acquiring the corporation's assets from a third-party who was not authorized to sell the assets. *Id.* at 393–94. The shareholders sued for the decline in value of their shares caused by the fraudulent sale. *Id.* at 394.

The court ruled that the claim was derivative. *Id.* at 395. According to the court, the interference with contract was "specifically directed at [the two shareholders], not the corporation." *Id.* (alteration added). The defendants "specifically directed their efforts at [the shareholders] in an attempt to separate them from their ownership interests in the corporation." *Id.* (alteration added).

-6-

Unlike those cases, in *Cunningham* itself, the court held that the plaintiff-shareholder was not owed a special duty. There, the president of a corporation sued for personal commercial losses after a vendor failed to produce acceptable products. *Cunningham*, 332 N.W.2d at 882–83. The corporation and the vendor entered into a lease agreement, signed by the president in his official capacity, and guaranteed in his individual capacity. *Id.* The Supreme Court of Iowa ruled the president was not owed a special duty, because his rights only arose from his status as a shareholder. *Id.* at 884. His rights arose from his status as a shareholder because he "signed the lease in his capacity as president," and "all prior understandings and agreements were merged into the lease agreement." *Id.* (citation omitted).

Like *Cunningham*, Shepard's claim does not arise in the context of a contractual relationship. He never pleads that his injury arose in the context of a contractual relationship involving Employers Mutual or Kelley. He alleges that his injury—the reduced stock price in the years leading up to the squeeze out—arose only from his status as a shareholder of EMCI. This is insufficient under Iowa law to plausibly plead a special duty arising out of a contractual relationship. *See id.*

2.

Special duties may also arise where shareholders are owed specific statutory duties. *See Rieff*, 630 N.W.2d at 293–95.

Shepard likens this case to *Rieff*, where the Iowa Supreme Court held that policyholders of a mutual insurance company could sue directly for breach of fiduciary duty against the company's directors. *See id.* Policyholders claimed the company and its directors breached their fiduciary duties by demutualizing the company in violation of Iowa statutes. *Id.* at 282–83.

According to the Iowa Supreme Court, the policyholders' breach of fiduciary duty claim was a "special duty" with "no corporate injury" due to Iowa's demutualization statute. *Id.* at 294. Under the Iowa Code, a demutualizing company

must follow "strict guidelines ensuring fairness to its policyholders," including notice to policyholders, a policyholder vote, and some form of payout to policyholders. *Id.* at 283. *See* **Iowa Code §§ 515G.3**, **515G.4**. "With an affirmative responsibility to disclose its intentions and seek approval from policyholders, as well as compensate them upon conversion, this creates a special duty not ordinarily cognizable between a mutual corporation and its policyholders." *Rieff*, 630 N.W.2d at 294. The "payout the policyholders would have received given a legal demutualization was never something the corporation was entitled to." *Id.* Where a company demutualized without following these steps, "the only parties injured were the policyholders, not the corporation." *Id.*

The *Rieff* case does not support Shepard's claim. That case addressed only a company failing to follow clear, step-by-step statutes during demutualization. Shepard does not identify specific statutes that Employers Mutual or Kelley did not follow.

Further, unlike *Rieff*, Shepard's claim is not based on the termination of his shareholder rights. He broadly alleges that Employers Mutual and Kelley breached their fiduciary duties "in the years leading up to the Squeeze-out." The policyholders in *Rieff*, conversely, alleged the company was terminating their rights as policyholders by demutualizing. Unlike the termination of shareholder rights in a demutualization, a reduction in share price is not an injury that solely affects the shareholders without harming the corporation. The *Rieff* case is inapposite here.

Shepard does not adequately plead that his injury arose from a special duty. The injury does not arise from the context of a contractual relationship or EMCI's failure to follow specific statutes in terminating his shareholder rights. *See id.* The "injuries alleged are the consequence of being a shareholder" of EMCI. *See Cunningham*, 332 N.W.2d at 884.

B.

According to Shepard, the district court erred in determining that his injury was not separate and distinct from that suffered by other shareholders. To show a separate and distinct injury, a plaintiff must show an injury "unique in comparison to those of the other shareholders, if any." ***Id.***

A loss in share value is not a separate and distinct injury. Under Iowa law, a "mere economic loss to the value of a shareholder's stock is not a 'separate and distinct' interest allowing intervention because it is a loss suffered by all shareholders, albeit to differing extents." ***Taylor v. Hogan***, 834 N.W.2d 82 (Table), 2013 WL 1749777, at *6 (Iowa Ct. App. 2013), *quoting **Cunningham***, 332 N.W.2d at 884. *See **Ezzone***, 525 N.W.2d at 394 ("The fact that a stockholder suffers indirect harm, such as a diminution in the value of corporate shares resulting from the impairment of corporate assets, due to a wrong done the corporation by a third party, does not give the stockholder an individual right of action since such an action would authorize multitudinous litigation and ignore the corporate entity." (citation omitted)); ***First Nat. Bank v. Fireproof Storage Bldg. Co.***, 202 N.W. 14, 18 (Iowa 1925) ("An unlawful diversion of the funds of the corporation is an injury to the corporation. Stockholders may maintain an action therefor, if the directors on demand refuse to do so, but such a suit is for the benefit of the corporation and not in their individual right." (citation omitted)); ***McGinnis v. Iowa Clinic, P.C.***, 776 N.W.2d 110 (Table), 2009 WL 2424643, at *3 (Iowa Ct. App. 2009) (same); ***Kelly v. Englehart Corp.***, 2001 WL 855600, at *9 (Iowa Ct. App. 2001) (unpublished) ("Suits charging mismanagement that depresses the value of stock are derivative in nature."). *See also **Cunningham***, 332 N.W.2d at 884 (holding the sale of a corporation at a loss was not a "separate and distinct" injury, even though the loss "fell heaviest on those who had invested the most"); ***Redeker v. Litt***, 699 N.W.2d 684 (Table), 2005 WL 1224697, at *4 (Iowa Ct. App. 2005) (a plaintiff's injury was "indirect" because "it flowed through the corporation").

Shepard does not plausibly plead that his injuries were unique to himself. All other shareholders, including Employers Mutual (the majority shareholder), suffered the injury of EMCI's depressed value and share price. His allegations that Employers Mutual and Kelley breached their duty of loyalty by favoring Employers Mutual to the detriment of minority shareholders is a derivative claim on behalf of EMCI. EMCI—the corporation—was injured first and foremost. Shepard (as well as all other shareholders) was secondarily injured by the resulting decrease in share value.

Shepard argues the decrease in EMCI's value separately and distinctly injured minority shareholders because Employers Mutual ultimately benefited from the low share price, by purchasing EMCI at a reduced price. He cites *Meade*, where the Iowa District Court considered a claim that Employers Mutual and EMCI's directors breached their fiduciary duties by depriving minority shareholders of the value of their EMCI shares during the squeeze out. *See Meade v. EMCI*, Case No. LACL146098, at 8 (Iowa Dist. Ct. Polk Cty. 2020), *appeal granted*, No. 21-0098 (Iowa Mar. 1, 2021). The court rejected Employers Mutual's argument that the claim was derivative, ruling that the minority shareholders' injury was separate and distinct from Employers Mutual's. *Id.* at 22. Given "the nature of the merger," the court could "not see based upon Meade's allegations how the actions of the defendants injured EMCI." *Id.* at 21, 23. "EMCI went from being a public corporation with the majority of its shares owned by EMCC to a private corporation with EMCC owning all of the shares of the corporation." *Id.* at 21–22.

Most importantly, the *Meade* court repeatedly distinguished that case from Shepard's claim. The court emphasized that unlike Shepard, "Meade is not asserting a claim that the defendants mismanaged EMCI causing the stock to be undervalued." *Id.* at 23. While the shareholders' allegations in *Meade* were based on the squeeze out and inadequate purchase price, Shepard "alleged mismanagement by the defendants *prior to* the going-private transaction, which resulted in depressing the value of EMCI's stock." *Id.* (emphasis added). "Shepard was seeking recovery for an injury to the corporation that was shared indirectly by the shareholders, which did

not meet the separate and distinct injury test." *Id.* In *Meade*, in the merger context, the injury was not shared by EMCI. *See id.*

Shepard also relies on non-Iowa cases to argue that his injury is separate and distinct because Employers Mutual benefited from EMCI's reduced share price. He cites *Gentile*, where the Supreme Court of Delaware ruled minority shareholders could bring their corporate overpayment claim as a direct action. *See Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006). The court recognized that "Normally, claims of corporate overpayment are treated as causing harm solely to the corporation and, thus, are regarded as derivative." *Id.* But there is an exception where:

> (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.

*Id.* at 100 (citations omitted). Minority shareholders have a separate injury because "the shares representing the 'overpayment' embody both economic value and voting power, the end result of this type of transaction is an improper transfer—or expropriation—of economic value and voting power from the public shareholders to the majority or controlling stockholder." *Id. See Gatz v. Ponsoldt*, 925 A.2d 1265, 1278 (Del. 2007) (en banc) (same). As a result, "the harm resulting from the overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares." *Gentile*, 906 A.2d at 100.

Even if Iowa law recognized this exception, Shepard does not make a corporate overpayment claim. He also does not allege any of Employers Mutual or Kelley's actions diluted his shares' economic value *and* voting power. *See El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1263–64 (Del. 2016) (en banc) (a claim "does not satisfy the unique circumstances presented by the *Gentile*

species of corporate overpayment claim[s]" where the shareholder does not allege dilution of their voting rights (alteration in original) (internal quotations omitted)). His complaint does not meet the *Gentile* exception.

Shepard also cites *Kim*, where the Colorado Court of Appeals ruled that a minority shareholder's injury from the corporation's sale of convertible preferred stock to the controlling shareholder's trust was a separate and distinct injury from any damages to the corporation. *See **Kim v. Grover C. Coors Tr.***, 179 P.3d 86, 89 (Colo. App. 2007). Like in *Gentile*, the court in *Kim* emphasized that the controlling shareholders diluted *both* the economic value *and* voting rights of minority shareholders, while "simultaneously increasing the ownership and value of their own shares." ***Id.*** *See **Kennedy v. Venrock Assocs.***, 348 F.3d 584, 587, 591 (7th Cir. 2003) (minority shareholders' breach of fiduciary duty claim based on defendants' attempt to "seize control of and plunder" the corporation was derivative, because they did not allege dilution of their voting power). Shepard does not allege his voting rights were ever affected by Employers Mutual and Kelley's alleged mismanagement. Even if this were Iowa law, Shepard would not meet this exception.

### III.

Because Shepard's claim is derivative in nature, he must satisfy federal and Iowa requirements for filing a derivative action.

When shareholders sue derivatively, they "must satisfy the pleading requirements of Federal Rule of Civil Procedure 23.1, which incorporate a threshold issue of substantive state law, the sufficiency of demand or excuse." ***Cottrell v. Duke***, 737 F.3d 1238, 1247 (8th Cir. 2013) (citations omitted). Rule 23.1 "does not make seeking action from the board a prerequisite to bringing a derivative suit." ***Cottrell v. Duke***, 829 F.3d 983, 989 (8th Cir. 2016). Instead, it operates as " 'a rule of pleading' that 'requires that the complaint . . . allege the facts that will enable a federal court to decide whether' derivative plaintiffs complied with such a demand

-12-

requirement imposed by another source." ***Id.*** (alteration in original), *quoting **Gomes v. Am. Century Companies, Inc.***, 710 F.3d 811, 815 (8th Cir. 2013). Where a demand requirement is imposed by another source, "shareholders seeking to enforce a corporation's rights through a derivative action must 'state with particularity' 'any effort' they took 'to obtain the desired action from the [corporation's] directors' and 'the reasons for not obtaining the action or not making the effort.' " ***Id.*** (alteration in original), *quoting* **Fed. R. Civ. P. 23.1**. *See **Berger v. Gen. United Grp., Inc.***, 268 N.W.2d 630, 635 (Iowa 1978) ("Behind the demand rule is the rationale courts should not interfere in internal affairs of private corporations until all intracorporate remedies have been exhausted.").

Iowa law imposes a substantive demand requirement. Shareholders suing to enforce corporate rights "shall support their petition by affidavit, and allege their efforts to have the directors, trustees or other shareholders bring the action or enforce the right, or a sufficient reason for not making such effort." **Iowa R. Civ. P. 1.279**. A shareholder "shall not commence a derivative proceeding" unless (1) a "written demand has been made upon the corporation to take suitable action," *and* (2) "[n]inety days have expired from the date delivery of the demand was made, unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period." **Iowa Code § 490.742** (alteration added). This demand requirement "imposes little hardship on the complaining shareholders," and may be satisfied "by simply mailing a copy of the complaint to the board of directors advising them that unless the corporation enforces its rights, the shareholders will institute a derivative action against the alleged wrongdoer." *Berger*, 268 N.W.2d at 636 (citation omitted).

Shepard failed to satisfy federal and Iowa pleading requirements for his derivative action. His complaint does not state with particularity his efforts to enforce minority shareholder rights in the years leading up to the squeeze out. *See* **Fed. R. Civ. P. 23.1**. It similarly does not allege that he petitioned the directors or other shareholders in writing, or that 90 days have expired since delivery of the

demand and EMCI rejected his request, or irreparable injury would result by waiting for the expiration of the ninety days. *See* **Iowa R. Civ. P. 1.279**; **§ 490.742**. The dismissal was appropriate.

Shepard requests—for the first time on appeal, within a footnote—that if his claim is derivative, he should be granted leave to file a derivative claim. This argument is waived and is not considered by this court. *See* ***Park Irmat Drug Corp. v. Express Scripts Holding Co.***, 911 F.3d 505, 519 (8th Cir. 2018) (rejecting a request for leave to amend where plaintiff "never moved to amend its complaint, nor did it request such relief in its memorandum in opposition" to defendant's motion to dismiss); ***Ritchie Cap. Mgmt., L.L.C. v. Jeffries***, 653 F.3d 755, 763 n.4 (8th Cir. 2011) (refusing to address the merits of an argument "mentioned in [appellees'] brief only by way of a footnote" (alteration added)).[3]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

_____

[3]Employers Mutual and Kelley's motion for leave to file a supplemental appendix is denied.