# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2198

_____

Jesse Campbell, Individually and on Behalf of All Others Similarly Situated

*Plaintiff - Appellant*

v.

Transgenomic, Inc.; Paul Kinnon; Precipio, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 15, 2018
Filed: March 1, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

Following a merger, Transgenomic shareholder Jesse Campbell brought a class action for former Transgenomic shareholders alleging materially misleading statements and omissions in the proxy statement. The district court dismissed, ruling that, as a matter of law, any omissions or misstatements in the proxy statement were

not materially misleading.  Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

## I.

In October 2016, biotechnical company Transgenomic, Inc. and cancer-diagnostics company Precipio, Inc. ("pre-merger Precipio") agreed to form Precipio, Inc. ("post-merger Precipio").  Transgenomic filed a proxy statement with the Securities and Exchange Commission and sent it to Transgenomic shareholders. They voted to approve the merger in June 2017.

Jesse Campbell brought a class action for former Transgenomic shareholders against Transgenomic, post-merger Precipio, and Paul Kinnon, Transgenomic's former president, CEO, interim CFO, secretary, and director.  The Amended Complaint alleges that Transgenomic and Kinnon violated Sections 14(a) and 20(a) of the Securities Exchange Act and SEC Rule 14a-9 by disseminating a false and materially misleading proxy statement that failed to give Transgenomic shareholders an accurate picture of Precipio's value.  The district court dismissed for failure to state a claim.  Campbell appeals.

## II.

This court reviews de novo the dismissal of a securities fraud amended complaint, affirming only if the plaintiffs can prove no set of facts entitling them to relief.  *See **Elam v. Neidorff**,* 544 F.3d 921, 926 (8th Cir. 2008).  "The Private Securities Litigation Reform Act ('PSLRA') imposes heightened pleading standards in securities-fraud cases."  ***In re Stratasys Ltd. S'holder Sec. Litig**.,* 864 F.3d 879, 882 (8th Cir. 2017).  An adequate complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." **15 U.S.C. § 78u-4(b)(1)**.  The court views factual allegations most favorably to the

plaintiff and assumes the truth of particularly pled allegations, but not of "catch-all" or "blanket" assertions that do not meet the particularity requirements of the statute. *See* ***Fla. State Bd. of Admin. v. Green Tree Fin. Corp.***, 270 F.3d 645, 660 (8th Cir. 2001).

"A securities fraud 'plaintiff must show that the defendant made a statement that was misleading as to a material fact.'" ***In re Stratasys Ltd.***, 864 F.3d at 882, *quoting* ***Matrixx Initiatives, Inc. v. Siracusano***, 563 U.S. 27, 38 (2011). "Generally, the issue of whether a public statement is misleading is a mixed question of law and fact for the jury." ***In re K-tel Int'l, Inc. Sec. Litig.***, 300 F.3d 881, 897 (8th Cir. 2002) (evaluating materiality of misleading public statements under § 10(b) and 10b–5). *See also* ***Basic Inc. v. Levinson***, 485 U.S. 224, 231-32 (1988) (applying 14(a) and 14-9 materiality standard to 10(b) and 10b-5 claims). "The issue is appropriately decided as a matter of law, however, when reasonable minds could not differ." ***K-tel***, 300 F.3d at 897. Campbell alleges that the proxy statement was materially misleading in two ways.

## A.

Campbell alleges that the proxy statement was materially misleading because it omitted Precipio's projected net income/loss (which the Transgenomic board reviewed before approving of the merger). The proxy statement also omitted expenses that would allow investors to independently calculate Precipio's net income/loss from its revenue projections and gross profit. Transgenomic denies that the omission of net income/loss is materially misleading because the proxy statement fully disclosed other important metrics such as projected unlevered free cash flows, revenue projections, and gross profit. The district court agreed. It thought that the question was—because a proxy statement need not disclose all financial information—"the crux of the analysis is this: where the proxy statement chooses to disclose a financial valuation, does it do so honestly?" This is the wrong inquiry.

"Section 14(a) 'was intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'" ***SEC v. Shanahan***, 646 F.3d 536, 546 (8th Cir. 2011), *citing **TSC Indus., Inc. v. Northway, Inc.***, 426 U.S. 438, 444 (1976). "Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up." ***Mendell v. Greenberg***, 927 F.2d 667, 670 (2d Cir. 1990). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." ***Northway, Inc.***, 426 U.S. at 449. "Under this test it is not necessary to prove that disclosure of an omitted fact would have caused a reasonable investor to change his decision." ***Alton Box Bd. Co. v. Goldman, Sachs & Co.***, 560 F.2d 916, 920 (8th Cir. 1977), *citing **Northway, Inc***., 426 U.S. at 449. "The role of the materiality requirement is . . . to determine whether a reasonable investor would have considered the omitted information significant at the time." ***Parnes v. Gateway 2000, Inc.***, 122 F.3d 539, 547 (8th Cir. 1997). This standard "enable[s] the shareholders to make an informed choice" without "bury[ing] the shareholders in an avalanche of trivial information." ***Northway, Inc***., 426 U.S. at 448.

Pre-merger Precipio's projected net income/loss is not trivial information. Net income "may be of more significance to investors" than revenue. ***Gebhardt v. ConAgra Foods, Inc.***, 335 F.3d 824, 830 (8th Cir. 2003) (finding revenue overstatement in earning statements materially misleading). This court has considered net income to be among the three most valuable figures in determining the fairness of an acquisition under the Clayton Act. *See **Mississippi River Corp. v. FTC***, 454 F.2d 1083, 1086 (8th Cir. 1972) (considering assets, revenue, and net income). "A fact is material 'when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" ***In re Stratasys Ltd.***, 864 F.3d at 882, *quoting **Matrixx Initiatives, Inc.***, 563 U.S. at 38. The

disclosure of Precipio's net income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger Precipio's net income/loss. It cannot be determined as a matter of law "whether a reasonable investor would have considered [pre-merger Precipio's projected net income/loss] significant at the time." *Parnes*, 122 F.3d at 547.

Additionally, the proxy statement did disclose gross profit projections for pre-merger Precipio. By omitting the (allegedly) significantly lower projections for Precipio's net income/loss, the proxy statement may have presented Precipio in a false light that was materially misleading. *See **In re Vivendi, S.A. Sec. Litig.***, 838 F.3d 223, 239-40 (2d Cir. 2016) (distinguishing "pure omissions" from misleading "half-truths" and finding both may be actionable securities fraud). *Cf.* ***Universal Health Servs., Inc. v. United States ex rel. Escobar***, 136 S. Ct. 1989, 2000, 2000 n.3 (2016) (referencing the definition of misrepresentations in securities law, explaining that "half-truths"—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations under the False Claims Act). Omissions from a proxy statement are material if their disclosure is "necessary in order to make the statements therein not false or misleading." **17 C.F.R. § 240.14a-9**.

Because a reasonable investor may have viewed disclosure of Precipio's net income/loss as having "significantly altered the 'total mix' of information made available," *Northway, Inc.*, 426 U.S. at 449, the materiality of the omission was improperly resolved as a matter of law.

> Doubts as to the critical nature of information misstated or omitted will be commonplace. And particularly in view of the prophylactic purpose of the Rule and the fact that the content of the proxy statement is within management's control, it is appropriate that these doubts be resolved in favor of those the statute is designed to protect.

*Id.* at 448. The trier of fact should determine the materiality of the omission. *See Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 735-37 (2d Cir. 1987) (trier of fact should determine materiality of proxy statement's failure to disclose that holding company that owned all the stock and that had been financing the losses of the corporation was considering terminating its relationship with the corporation); *Lockspeiser v. W. Maryland Co.*, 768 F.2d 558, 562 (4th Cir. 1985) (trier of fact should determine materiality of proxy statement's omission of quantity of assets where shareholders may choose to accept offered price or to seek appraisal under state law).

B.

Campbell alleges that the proxy statement is also materially misleading because it mislabels a "Revenue distribution" table. Page 60 of the proxy statement says:

Transgenomic's internal financial projections included the following:

|  | 2016E | 2017E | 2018E | 2019E | 2020E |
|---|---|---|---|---|---|
| Revenues | $ 1,792 | $ 2,411 | $ 6,692 | $ 10,835 | $ 12,547 |
| COGS | $ 2,124 | $ 1,020 | $ 2,270 | $ 3,105 | $ 3,205 |
| Gross Profit | $ (332) | $ 1,391 | $ 4,422 | $ 7,730 | $ 9,342 |
| SG&A & R&D | $ 7,479 | $ 7,551 | $ 7,929 | $ 8,325 | $ 8,742 |
| Operating Profit | $ (7,811) | $ (6,160) | $ (3,507) | $ (596) | $ 601 |

Precipio's internal financial projections included the following:

Revenue distribution

|  | 2016E | 2017E | 2018E | 2019E | 2020E |
|---|---|---|---|---|---|
| Services | $ 2.62 | $ 5.51 | $ 11.38 | $ 29.32 | $ 63.74 |
| Technology | $ — | $ 4.78 | $ 5.71 | $ 6.86 | $ 8.24 |
| Total | 2.62 | 10.29 | 17.09 | 36.18 | 71.98 |
| Services | 100% | 54% | 67% | 81% | 89% |
| Technology | 0% | 46% | 33% | 19% | 11% |

The parties agree that the top table shows projections only for Transgenomic. The dispute is about the "Revenue distribution" table.

At the beginning of the proxy statement, a Summary Term Sheet defines pre-merger Precipio as "Precipio" and post-merger Precipio as "New Precipio." But in the "Revenue distribution" table—as Transgenomic has since clarified—"Precipio's" refers to *post-merger Precipio's*, with revenue projections for both pre-merger Precipio and Transgenomic. Campbell alleges that the "Revenue distribution" table caused shareholders to believe that Precipio was significantly more valuable than it was.

Transgenomic counters that the label is not materially misleading because other clues in the proxy statement tell shareholders that the figures in this table refer to post-merger Precipio. First, according to Transgenomic, a reasonable investor would understand the "Technology" line to refer to Transgenomic because it is a technology company. The district court agreed, noting that the proxy statement "generally describes Transgenomic as a 'Technology' driven entity, while Precipio is a 'Service' focused business." The district court did not acknowledge that pre-merger Precipio was in part a technology company, which Transgenomic acknowledges.

Second, Transgenomic argues that a reasonable investor would have known the numbers in the "Revenue distribution" table correspond to post-merger Precipio because they approximate those appearing seven pages earlier in the proxy statement. There, in a table titled "Discounted Cash Flow Analysis of Combined Company," a row labeled "Services Revenue" has numbers that—rounded—equal the numbers in the "Revenue distribution" table. According to Transgenomic, a reasonable investor would understand that the numbers seven pages earlier refer to post-merger Precipio, and therefore, the rounded numbers in the "Revenue distribution" table refer to post-merger Precipio. Third, Transgenomic argues that a reasonable investor would know that the numbers in the "Services" row refer to pre-merger Precipio because they match the unrounded numbers ten pages earlier in a table referring to revenue from "Only Precipio." But the district court did not acknowledge that fourteen pages earlier, the proxy statement uses the title "Precipio's internal financial projections"

to refer to "stand-alone analyses performed on [pre-merger] Precipio." And one page before that, the proxy statement states that its preparation involved the review of "certain internal financial projections for Transgenomic and Precipio on a stand-alone basis."

Finally, Transgenomic argues that the "Revenue distribution" table is not misleading because the "Technology" row is blank for 2016, the year before the merger, signaling that the table has post-merger numbers. But if the whole table has post-merger numbers, then the services row should also be blank for 2016. It is not. Further, "reasonable minds could . . . differ" about the significance of the blank line. *K-tel*, 300 F.3d at 897. The proxy statement later explains that Precipio is developing a virtual software platform "[e]xpected to launch in 2017." This technology development could explain why the row is blank until 2017.

The district court found that "the projection could have more clearly demonstrated that 'Precipio's internal financial projection' was a 'post-merger Precipio internal financial projection.'" But, the district court concluded that "any mislabeling" was not materially misleading. True, the clues listed by Transgenomic may support a finding that the labeling was not misleading. *See, e.g.*, *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) ("While a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil."). However, as a matter of law, the clues cited by Transgenomic do not mean that the "Revenue distribution" table is not materially misleading. "The point of a proxy statement, after all, should be to inform, not to challenge the reader's critical wits." *Id.*

Whether a reasonable investor would decipher from other clues in the proxy statement that "Precipio" in the "Revenue distribution" table refers to "pre-merger Precipio" is a question for the trier of fact. *See In re Control Data Corp. Sec. Litig.*,

933 F.2d 616, 621 (8th Cir. 1991) ("The trier of fact is uniquely competent to determine materiality, as that inquiry requires 'delicate assessments of inferences a [reasonable investor] would draw from a given set of facts.'"), *quoting **Northway, Inc.***, 426 U.S. at 450.[1]

III.

Campbell's 20(a) allegation against Kinnon is also sufficient. Section 20(a) of the Securities Exchange Act establishes control-person liability of those who, subject to certain defenses, "directly or indirectly" control a primary violator of the federal securities laws. **15 U.S.C. § 78t(a)**. "Section 20(a) . . . is designed to ensure that securities brokers act properly and supervise their employees, and, therefore, it imposes liability in those cases in which the supervisor did not directly participate in the bad acts." *In re Miller*, 276 F.3d 424, 429 (8th Cir. 2002). "Section 20(a) extends liability well beyond traditional doctrines, providing expansive remedies in a highly regulated industry." *Id.* "[T]he control-person statute is remedial and is to be to be construed liberally . . . requiring only some indirect means of discipline or influence short of actual direction to hold a controlling person liable." *Farley v. Henson*, 11 F.3d 827, 836 (8th Cir. 1993).

Campbell sufficiently pled: (1) "a 'primary violator' violated the federal securities laws"; (2) Kinnon "actually exercised control over the general operations of the primary violator"; and (3) Kinnon "possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010). If the first prong survives a motion to dismiss under the PSLRA heightened pleading standard, "the second and third prongs involve questions of

---

[1]Transgenomic argues that Campbell did not adequately plead loss causation. Because the district court did not address this issue, this court declines to address it.

control and are therefore analyzed under . . . ordinary notice-pleading standard." *Id.* at 875. Under that standard, this court assumes as true all factual allegations in the pleadings, interpreting them most favorably to Campbell, the nonmoving party. *See Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 751 (8th Cir. 2016). Because Campbell's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the dismissal of the § 20(a) claim is reversed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*\* \* \* \* \* \* \**

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

_____